

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In Re:                              :
                                    :
SAINT VINCENTS CATHOLIC MEDICAL     :
CENTERS OF NEW YORK, <u>et al.</u>,      :        Bankr. Case No.
                                    :        10-11963 (CGM)
                                    :
             Debtors.               :
                                    :
------------------------------------x
                                    :
ERICA T. KAGAN, an attorney at      :
Kurland, Bonica & Associates, P.C., :
                                    :
             Appellant,             :        10 Civ. 8100 (JSR)
                                    :
        -v-                         :
                                    :        <u>OPINION AND ORDER</u>
SAINT VINCENTS CATHOLIC MEDICAL     :
CENTERS OF NEW YORK, <u>et al.</u>,      :
                                    :
             Appellees.             :
                                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     On October 26, 2010, appellant Erica T. Kagan filed an

appeal from a September 9, 2010 Order issued by the Honorable

Cecelia G. Morris, United States Bankruptcy Judge for the

Southern District of New York (the "Stay Enforcement Order").

The Stay Enforcement Order enforced the automatic stay imposed by

the Bankruptcy Court and enjoined appellant from prosecution of

the case captioned <u>In the Matter of Erica T. Kagan, an attorney</u>

<u>at Kurland, Bonica & Associates, P.C. v. New York State</u>

<u>Department of Health</u>, Index No. 110869/2010, in the New York

State Supreme Court.  Following full briefing and oral argument,

the Court issued a "bottom-line" Order on April 5, 2010,
affirming the Stay Enforcement Order and dismissing the appeal.
This Opinion and Order explains the reasons for the Court's
decision and directs the Clerk to enter final judgment.

The instant appeal arises from the closure of St. Vincent's
Hospital Manhattan (the "Hospital"), a facility operated by
debtor-appellee Saint Vincent's Catholic Medical Centers of New
York ("SVCMC"). Appellees' Br. at 2. On April 6, 2010,
following several years in which the Hospital incurred tens of
millions of dollars in operating losses, the Board of Directors
of SVCMC voted to approve closure of the Hospital. Id. at 2-3.
According to Debtors, they submitted a final plan for closure of
the Hospital (the "Closure Plan") to the New York State
Department of Health (the "DOH") on April 8, 2010, and the DOH
subsequently approved the plan. Id. at 3. On April 14, 2010,
the Debtors filed for relief under Chapter 11 of the Bankruptcy
Code and moved for interim and final orders authorizing Debtors
to fully implement the Closure Plan (the "Closure Motion"). Id.
On April 16, 2010, the Bankruptcy Court entered an order granting
the Closure Motion on an interim basis (the "Interim Closure
Order"). Id.

On April 20, 2010, eight plaintiffs represented by the law firm of Kurland, Bonica & Associates, P.C. (the "Kurland Plaintiffs"[1]) filed a complaint against the DOH and the Commissioner of the DOH, Richard F. Daines, in the New York State Supreme Court, County of New York (the "First State Court Action"). Id. at 3.  See Richard Stack, et al. v. New York State Department of Health, et al., No. 105114/10.  The complaint alleged that defendants violated various laws in approving the Hospital's closure,[2] including 10 N.Y.C.R.R. § 401.3(g), which provides that "[n]o medical facility shall discontinue operation or surrender its operating certificate unless 90 days' notice of its intention to do so is given to the commissioner and his written approval obtained."  N.Y. Comp. Codes R. & Regs. tit. 10, § 401.3(g) (2010)).  Plaintiffs sought an order enjoining any further action by the defendants to close the Hospital and

---

[1] The plaintiffs were: Richard Stack, Joan Bryson, Barbara Police, Patricia Slone, John M. Gillen, Jay Kallio, "Jane Doe Nurse," and "John Doe Doctor."

[2] The plaintiffs also alleged that defendants violated "State Finance Law, § 123-b; General Municipal Law, § 51; Not-for-Profit Corporation Law, Article 5, §521; Public Officers Law, Article 7, § 100; . . .  New York Public Health Law, §2801-(c); and, §2806(6)(a)(b)(c)(d)(e)(f)."  See Complaint, dated April 19, 2010, ¶ 72.

3

compelling the DOH Commissioner to initiate investigations of the Hospital.  See 04/19/10 Compl. at 16-19.

On April 22, 2010, Judge Morris issued an Order enforcing the "Interim Closure Order" and enjoining the Kurland Plaintiffs from prosecuting the First State Court Action.  After considering objections from the Kurland Plaintiffs, Judge Morris issued a Memorandum Decision on May 14, 2010 granting the Closure Motion and authorizing the Hospital to be closed (the "Final Closure Order").  The Kurland Plaintiffs' initial appeal of both these decisions was denied by this Court on the grounds that the Kurland Plaintiffs lacked standing to bring claims that were, in any event, moot.  See Stack v. St. Vincents Catholic Med. Ctrs of N.Y., No. 10 Civ. 4531 (JSR), 2010 U.S. Dist. LEXIS 116298, at *2 (S.D.N.Y. Oct. 25, 2010) (the "First Appeal").  The Court denied the Kurland Plaintiff's motion for reconsideration on December 15, 2010.

Meanwhile, on June 14, 2010, Erica T. Kagan, an attorney at Kurland, Bonica & Associates, P.C., submitted to Robert Locicero of the DOH Records Access Office a request pursuant New York's Freedom of Information Law ("FOIL") requesting "closure plans and/or any documents submitted by St. Vincent's Catholic Medical Center regarding the closure of the Inpatient and Outpatient

4

services at its Manhattan hospital, and any additional related documents available." Appellant's Br. at 7.  On June 15, 2010 Valerie L. Giordano acknowledged receipt of the request and estimated that DOH would take 20 days to determine the availability of documents.  Id.  However, Kagan "did not receive any further response from the DOH and received no documents regarding this FOIL request within the specified 20 days."  Id. On July 28, 2010, Mark Taylor, an attorney at the firm of Rankin & Taylor, sent a letter to the DOH Records Access Appeals Officer on behalf of Kagan stating that she had not received any response within thirty days and was therefore considering DOH's silence a constructive denial of her request.  Id.

On August 16, 2010, Kagan commenced an Article 78 proceeding against the DOH in the New York State Supreme Court (the "Second State Court Action").  Id. at 8.  On August 16, 2010, New York State Supreme Court Justice O. Peter Sherwood issued an Order to Show Cause "why an order should not be entered ordering the DOH to provide Petitioner with any and all documents related to any and all closure plans of Saint Vincent's Catholic Medical Centers, including but not limited to the February 17, 2010 and April 9, 2010 alleged closure plans as well as any other documents used as part of the closure plan of Saint Vincent's

5

Catholic Medical Centers [and] awarding reasonable attorneys fees for this action."  Id. at 8.

On August 16, 2010, the Debtors wrote a letter to Kagan asserting that the Second State Court Action violated the automatic bankruptcy stay and requesting that she withdraw it. Appellees' Br. at 7.  On August 19, 2010, Yetta Kurland, another attorney at Kurland, Bonica & Associates, P.C., responded that the automatic stay did not apply because the action was only against the DOH.  Id.  On August 24, 2010, DOH advised Kagan that documents responsive to her request were available for review. Id.  On August 26, 2010, Kagan received "certain documents from the DOH regarding St. Vincent's Catholic Medical Center." Appellant's Br. at 9.

On August 27, 2010, the Debtors moved to enforce the automatic stay against the Second State Court Action.  Apellees' Br. at 7.  As explained more fully below, the Bankruptcy Court found that Kagan was "seeking information that may be used to show fraud, improper transfers and failure to abide by state law, all of which [claims] are in the exclusive province of the debtor, the creditor, the [creditors'] committee and this Court." Id.  Judge Morris therefore entered the Stay Enforcement Order on September 9, 2010, which enjoined Kagan "from taking any actions

6

and otherwise proceeding in furtherance of or in connection with the [Second] State Court Action and the allegations in the affirmations submitted by or on behalf of [Appellant] in such action." Id. at 7-8. Kagan filed the instant appeal on October 26, 2010.

With this lengthy background in mind, the Court now turns to the merits of Kagan's appeal. Pursuant to 28 U.S.C. § 158(a)(1), district courts are vested with jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. WorldCom, Inc. v. Waldinger Corp. (In re WorldCom, Inc.), No. 09 Civ. 9623 (RJS), 2011 U.S. Dist. LEXIS 42279, at *8 (S.D.N.Y. Apr. 19, 2011). The legal conclusions of the bankruptcy court are reviewed de novo, but the findings of fact are reversed only when they are "clearly erroneous." Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.), 415 B.R. 77, 83 (S.D.N.Y. 2009). Thus, while the bankruptcy court's findings of fact are not conclusive on appeal, "the party that seeks to overturn them bears a heavy burden," H & C Dev. Group, Inc. v. Miner (In re Miner), 229 B.R. 561, 565 (2d Cir. 1999), and the reviewing court must be left with a "definite and firm conviction" that a mistake has been made before overturning

7

such factual findings.  Ortega v. Duncan, 333 F.3d 102, 107 (2d Cir. 2003) (citation omitted).

Kagan challenges the Stay Enforcement Order on four grounds, two of which merit little discussion.  First, she asserts the vague argument that "the public's right to access public documents may not be superseded."  Appellant's Br. at 10.  She then proceeds to discuss the virtues of access to public records, the general importance of FOIL proceedings, and the reasons why she is entitled to the documents she seeks under FOIL.  See Appellant's Br. at 10-18.  However, these arguments are largely, if not entirely, irrelevant.  As Debtors point out, "[t]his appeal arises out of a motion to enforce the automatic stay, the applicability of which does not turn on matters of state FOIL law."  Appellees' Br. at 16.  Put another way, the merits of the FOIL proceeding are immaterial to this Court's consideration of whether the Bankruptcy Court erred in issuing the Stay Enforcement Order, which is the Order here appealed from.

Second, Kagan argues that the Bankruptcy Court violated the First, Fifth, Tenth and Fourteenth Amendments of the United States Constitution.  As to the First Amendment claim, Kagan's allegation that the Stay Enforcement Order constitutes a "prior restraint on protected speech," see Appellant's Br. at 19, is

8

clearly without merit.  The Bankruptcy Court did not restrict appellant's speech in any way; she is free to say, write, or publish anything she would like concerning this case, any other case, or the closure of the Hospital.  The Bankruptcy Court simply enjoined Kagan from litigating a state court case that Judge Morris determined violated the automatic stay.  Kagan is free to challenge the merits of the Bankruptcy Court's decision, as she is now doing, but the stay of a state court action does not constitute a prior restraint of speech.  If Kagan's argument to the contrary had any merit, then 11 U.S.C. § 362 would itself be unconstitutional, which plainly it is not.[3]

    Similarly, Kagan argues that the Bankruptcy Court "violated the substantive due process rights of the Petitioner, guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, by denying Petitioner the right to seek relief under Article 78 of the New York Civil Practice Law and Rules to compel a state agency to comply with state law."  Appellant's Br. at 19.  Again, if this claim had any merit, every stay of a

---

[3] Additionally, the cases Kagan cites in support of her First Amendment argument, U.S. v. Salameh, 992 F.2d 445 (2d Cir. 1993); United States v. Quattrone, 402 F.3d 304 (2d Cir. 2005); People v. Caruso, 2002 N.Y. Slip Op. 40001(U) (N.Y. Co. Ct. 2002); Seaman v. Wyckoff Heights Medical Center. Inc., 857 N.Y.S.2d 500 (2d Dep't 2008); and Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001), are plainly inapposite.

judicial proceeding imposed by a Bankruptcy Court would violate the substantive due process rights of the litigants in that proceeding.  Clearly this is not the law.

Finally, Kagan's Tenth Amendment argument is, if anything, even less tenable.  Section 362 of the Bankruptcy Code is a federal law promulgated under Article I, Section 8 of the United States Constitution, which confers upon Congress the authority to establish "uniform laws on the subject of bankruptcies throughout the United States."  U.S. Const. art. I, § 8, cl. 4.  This express constitutional delegation of authority renders the Tenth Amendment completely inapplicable.  Accordingly, the Court concludes that all of Kagan's constitutional arguments are without merit, not to mention frivolous and absurd.

By contrast, appellant's interrelated third and fourth points are at least colorable.  In her third point, Kagan argues that the FOIL proceeding does not violate 11 U.S.C. § 362.  Appellant's Br. at 21.  She points out that the FOIL proceeding is against the DOH, not the Debtors, and contends that stays pursuant to Section 362(a) are limited to debtors.  Id. at 21-22 (citing Teachers Ins. and Annuity Ass'n of America v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass

non-bankrupt co-defendants.").  She also argues that the object
of the FOIL proceeding is simply to obtain information, and
consequently that it will not interfere with the Debtors' estate.
Id. at 22.  And in her fourth point, Kagan contends that even if
the FOIL proceeding is arguably within the reach of the stay, the
"Bankruptcy Court erred and abused its discretion by extending
the reach of the stay in the exercise of its equitable powers
under 11 U.S.C. § 105(a)."  Id. at 23.  She argues that an
extension of the automatic stay protection to nondebtors is
reserved for cases where the court finds special or unusual
circumstances, and that these circumstances tend to involve an
immediate adverse consequence for the debtor's estate.  Id.
(citing In re North Star Contracting Corp., 125 B.R. 368, 370
(S.D.N.Y. 1991)).  According to Kagan, no such circumstances are
present in this instance.

        To assess the merits of Kagan's arguments, the Court must
first consider the unique factual circumstances underlying the
Bankruptcy Court's decision in this case.  As indicated above,
Kagan submitted her initial FOIL request to the DOH on June 14,
2010.  Appellant's Br. at 7.  Unsatisfied with the DOH's
response, Kagan initiated an Article 78 proceeding in the New
York State Supreme Court on August 16, 2010.  See Kagan v. New

York State Department of Health (In the Matter of: Erica T.
Kagan, an attorney at Kurland Bonica & Associates, P.C.), Index
No. 110869/2010.  The Order to Show Cause filed in the State
Court is explicitly "based upon" the "Verified Petition dated
August 13, 2010, Affidavit of Erica Kagan dated August 13, 2010,
Emergency Affirmation of Thomas D. Shanahan dated August 13.
[sic] 2010, Affirmation of Thomas D. Shanahan dated August 13,
2010, Affirmation of Yetta Kurland dated August 13, 2010, and all
Exhibits annexed hereto . . . ."  See Appendix of Appellee Saint
Vincents Catholic Medical Centers of New York, et al. ("App.")
Vol. III at 1068.

These documents contain numerous incendiary allegations
regarding the operation of Saint Vincent's Hospital and its
eventual closing.  Most notably, the Affirmation of Thomas D.
Shanahan, ostensibly submitted to provide "background," details
the "questionable financial practices of St. Vincent's Hospital"
and the "receipt of public funds by St. Vincent's."  Id. at 1087-
90.  Shanahan alleges, inter alia: (1) that the  "financial
irregularities raise substantial questions as to the Hospital's
management or mismanagement;" (2) that Hospital management failed
to disclose the Hospital's "purported financial difficulties" to
elected officials; (3) that SVCMC's decision to file for

12

bankruptcy "was part of a coordinated effort to engage in a real estate deal to sell the valuable property upon which the Hospital was located to the detriment of the community;" and (4) that SVCMC "continued to engage in fraud and deceptive practices via the issuance of a '2009 Strategic Plan.'" Id. at 1090-95.  The Affirmation concludes by stating that "Our Coalition has filed a Petition with the New York State Attorney General's Office to investigate the conduct of St. Vincent's and its Board." Id. at 1095.

Additionally, the documents assert claims that are nearly identical to those asserted in the First State Court Action (which, it will be recalled, the Bankruptcy Court determined violated the automatic stay).  For example, the Verified Petition claims that "the DOH has an obligation under Public Health Law §2806 and 10 NYCRR §410.3 to closely regulate the closure of hospitals in order to maintain the health and well-being of the public and to ensure the safety of all New Yorkers . . . ." Id. at 1075.  Similarly, Yetta Kurland alleges in her Affirmation in support of her FOIL request that SVCMC announced its intent to close the Hospital without giving the DOH ninety days notice or obtaining approval of a closure plan; that the "DOH failed to use its authority or exercise its obligations to ensure a proper

13

closure of the Hospital"; and that the DOH has failed to produce

the "alleged" closure plans of February 17, 2010 and April 9,

2010, which "means that the plan or lack of planning of the

closure of a major hospital has been shrouded in total secrecy."

Id. at 1081-1084.

After reviewing the contents of these documents, Judge

Morris made the following findings of fact and conclusions of

law:

> It appears from the foregoing that the petitioner[s] made the
> [FOIL] request and commenced the 78 proceeding because they
> are building a case for fraud committed by the debtor and its
> board, and that it is clear in the affidavits . . . what they
> want.  Bankruptcy law provides powerful tools to recover fraud
> and preference transfers, and to investigate the pre-petition
> dealings of the debtor, which may be exercised by the debtor
> in possession and the committee of unsecured creditors. . . .
>
> [T]he motive and status of petitioners are highly relevant in
> this bankruptcy case.  As shown by the supporting
> affirmations, petitioner is seeking information that may be
> used to show fraud, improper transfers and failure to abide by
> state law, all of which are in the exclusive province of the
> debtor, the creditor, the committee and this Court.
>
> Whatever pre-petition rights the interested public . . . might
> have possessed pursuant to the New York Freedom of Information
> Law[] to demand documents of the Department of Health related
> to the hospital pass to the debtor and the debtor-in-
> possession, and the committee of unsecured creditors, as a
> result of filing of these cases.  It is the exclusive right of
> the debtor and the committee to investigate the debtor and the
> propriety of its closing, and to recover fraudulent and
> preferential transfers.

14

The proceeding violates the automatic stay because[,] by
demanding the closure plan and related documents, in pointing
out potential fraudulent or other imprudent transfers, the
petitioner is conducting discovery, the only practical purpose
of which is to bring a case for fraud or recovery of assets,
which petitioner is prohibited from doing by bankruptcy law.

Additionally, because this Court has exclusive jurisdiction
over this case and these core proceedings, the state court no
longer has jurisdiction to decide the FOIL matter because it
fundamentally concerns the administration of this case and the
claims of this estate.

Transcript of Motion to Approve/Motion of Debtors for Entry of An

Order Enforcing the Automatic Stay, dated September 2, 2010, App.

Vol. III at 1343-44.

The Bankruptcy Court did not clearly err in making these

factual findings.  The papers filed by Kagan herself placed

before the State Court allegations that are within the exclusive

province of Bankruptcy Court to investigate.  By including these

affirmations in her State Court filing, Kagan presented questions

concerning SVCMC's management of the Hospital, its use of public

funds, the propriety of the Hospital closure, and even the

conduct of the Bankruptcy proceeding itself.  The documents

plainly indicate, as the Bankruptcy Court found, that Kagan's

motive for pursuing both the FOIL proceeding and the Second State

Court Action was to compile discovery for use in further legal

challenges prohibited by the stay.  Given the plain statements

15

included in the Petition and the accompanying affirmations, most
particularly the Shanahan Affirmation, the Court concludes it was
not clear error for the Bankruptcy Court to make the factual
findings quoted above.[4]

Having made these determinations, the Bankruptcy Court
correctly applied the law.  The filing of a bankruptcy petition
"operates as a stay, applicable to all entities, of [](1) the
commencement or continuation . . . of a judicial, administrative,
or other action or proceeding against the debtor . . . ; [and]
(3) any act to obtain possession or property of the estate or of
property from the estate or to exercise control over property of
the estate."  11 U.S.C. § 362(a).  Property of the estate, in
turn, includes "all legal or equitable interests of the debtor in
property as of the commencement of the case," 11 U.S.C. §
541(a)(1), "wherever located and by whomever held," 11 U.S.C.  §
541(a), including causes of action possessed by the debtor at the
time of filing.  See In re Jackson, 593 F.3d 171, 176 (2d Cir.

---

[4] To the extent Kagan contends that the Bankruptcy Court's
factual finding were erroneous because they were premised on a
finding that she is, in substance, the same party who brought the
First State Court Action, this argument is without merit.   The
Bankruptcy Court explicitly stated that it was "aware that the
petitioner is a different entity from the plaintiff in the
earlier state court matter, that this Court found was brought in
violation of the stay.  Who the petitioner represents in the
proceeding is immaterial because the proceeding itself violates
the stay."  App. at 1343.

2010).  "Every conceivable interest of the debtor, future,
nonpossessory, contingent, speculative, and derivative, is within
the reach of § 541."  <u>Chartschlaa v. Nationwide Mut. Ins. Co.</u>,
538 F.3d 116, 122 (2d Cir. 2008) (brackets and citation omitted).

Because these causes of action vest in the estate, the
automatic stay applies to prevent individual plaintiffs from
pursuing claims, even against non-debtors, that could result in
preferential recoveries or inconsistent verdicts.  As the Second
Circuit explained in <u>St. Paul Fire & Marine Ins. Co. v. PepsiCo.</u>,
Inc., 884 F.2d 688, 701 (2d Cir. 1989), by enacting the automatic
stay provision, "Congress intended to protect all creditors by
making the trustee the proper person to assert claims against the
debtor. . . .  If a claim is a general one, with no
particularized injury arising from it, and if that claim could be
brought by any creditor of the debtor, the trustee is the proper
person to assert the claim, and the creditors are bound by the
outcome of the trustee's action."  <u>Id.</u>  This reasoning applies
with equal force to claims which, "if proved, would have the
effect of bringing the property of the third party into the
debtor's estate, and thus would benefit all creditors.  It

17

therefore would be illogical to distinguish between this type of claim against a third party and a claim against the debtor." Id.

Accordingly, contrary to Kagan's assertions, the automatic stay provision is not limited solely to actions against the debtor, but rather bars actions against even against third-parties that would have an adverse impact on the property of the estate. See also In re 48th Street Steakhouse, 835 F.2d 427 (2d Cir. 1987); Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC, 429 B.R. 423, 433 (Bankr. S.D.N.Y. 2010) (staying action by non-debtor against third party when "the injuries alleged, as well as the purported source of those injuries, are common to" other creditors); In re Gen. Growth Props., Inc., 426 B.R. 71, 74 (Bankr. S.D.N.Y. 2010) (staying action by non-debtor against third party because plaintiff "cannot use judicial processes outside of the bankruptcy court to interfere with the administration of a bankruptcy case.").

Additionally, Section 105 of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "[T]he Bankruptcy Court has authority under section 105 broader than the

18

automatic stay provisions of section 362 and may use its
equitable powers to assure the orderly conduct of the
reorganization proceedings." Erti v. Paine Webber Jackson &
Curtis, Inc. (In re Baldwin- United Corp. Litig.), 765 F.2d 343,
348 (2d. Cir. 1985). Under Section 105, "[b]ankruptcy courts may
extend the automatic stay to enjoin suits by third parties
against third parties if they threaten to thwart or frustrate the
debtor's reorganization efforts." Rosetta Resources Operating LP
v. Pogo Producing Co. (In re Calpine Corp.), Bankr. No. 05-60200,
Adv. No. 06-1757, 2007 WL 1302604, *2 (Bankr. S.D.N.Y. Apr. 30,
2007) (internal quotation marks and citations omitted).

   In applying these principles, the Bankruptcy Court
analogized the instant case to Securities Investor Protection
Corp. v. Bernard L. Madoff Investment Securities LLC (In re:
Bernard L. Madoff), 429 B.R. 423 (Bankr. S.D.N.Y. 2010). In
Madoff, the trustee of a Securities Investor Protection Act
("SIPA") liquidation of a bankrupt investment firm sought to
enforce an automatic stay and enjoin customers from prosecuting
actions against third parties who had allegedly participated in
the Ponzi scheme orchestrated by the firm's principal. The Court
held that the customers, in asserting claims against the third
parties for conversion, unjust enrichment, conspiracy, and

19

violations of the Florida RICO Act, violated the stay by usurping causes of action belonging to the estate under sections 362(a)(3) and 541 of the Code.  429 B.R. at 429-35-.  Because the trustee had exclusive standing to bring causes of action that generally affect all creditors, and because the customers did not seek to redress a particularized injury different from that suffered by all other creditors, the Court held that claims asserted by the customers were the property of the estate "and thus violative of the automatic stay."  Id. at 431-34.  Additionally, the Court held that to the extent section 362(a) did not apply in its own right to stay the customer actions, "the damaging effects [of those actions] on the estate warrant[ed] extending the stay pursuant to section 105(a) of the Code and well-settled Second Circuit precedent."  429 B.R. at 434.  The Court determined that the actions would "negatively affect assets of the estate and the allocation thereof to customers, justifying extension of the automatic stay."  Id. at 435.  Additionally, the Court found that an injunction under Section 105(a) was warranted because the continuation of the customer actions threatened the court's jurisdiction and interfered with the administration of the case. Id. at 436-37.

So too in this case, the Bankruptcy Court found that "the papers filed by the petitioners in [the] Article 78 proceeding are rife with accusations of waste, fraud and questionable expenditures . . . [,] classic examples of the kind of expenditures that the debtor might recover as preferential, fraudulent[,] or for less than fair value." App. Vol. III at 1353. Thus, the Bankruptcy Court reasonably inferred that the real purpose of the Article 78 proceeding was to compile discovery to pursue such claims, which "exclusively lie[] with the debtor and committee to remedy." Id. at 1352. Allowing the Article 78 proceeding to continue, therefore, would have the effect of exerting control over property of the estate, as Kagan apparently sought "to collect, assess or recover a claim against the debtor that arose before the commencement of the case." Id. at 1349.

Additionally, the Court noted that, unlike Kagan, the Debtor and the committee are empowered to obtain and actually act upon the information requested in the FOIL proceeding, and determined that those entities "must not be forced to compete with the public at large in their efforts to recover estate assets and investigate the debtor." Id. at 1353. Moreover, Kagan failed to allege any injury distinct from that suffered by all other

21

creditors of the estate.  Id. at 1352-53.  In sum, the Bankruptcy
Court found that it would not, "under Section 105 and 362, . . .
allow an Article 78 proceeding to continue where the apparent
objective [was] to compile evidence of pre-petition wrongdoing by
the debtor and its principle."  Id. at 1354.

The Court fully agrees with Judge Morris's analysis and
thus, having already concluded that her order was a lawful
exercise of her power to enforce the stay, further concludes that
she did not abuse her discretion in issuing the Stay Enforcement
Order.  The Bankruptcy Court found that the purpose of the
Article 78 proceeding was to investigate and pursue claims
belonging exclusively to the bankruptcy estate, a finding not
clearly erroneous in light of the affirmations submitted by Kagan
in support of her Order to Show Cause.  Having made this
determination, the Court properly concluded that the Article 78
proceeding violated the automatic stay by usurping causes of
action belonging to the estate.  Additionally, by attempting to
investigate and pursue the very same claims that are being
investigated and pursued by the debtor and the committee, the
Article 78 proceeding threatened the Bankruptcy Court's
jurisdiction and interfered with the administration of the estate

22

such that an extension of the automatic stay pursuant to 11 U.S.C. § 105(a) was warranted.

The Court therefore re-affirms its April 5, 2011 Order affirming the Stay Enforcement Order of the Bankruptcy Court. The Clerk of the Court is directed to enter final judgment dismissing the appeal and closing the case.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated:      New York, New York
            May 23, 2011

23